Our fifth case for argument is Reynoso-Salgado v. Garland. Mr. Cabranes. Good morning, Your Honor. Before we begin, Mr. Cabranes, I am worried about your compliance with Circuit Rule 30, which requires the appendix to contain a copy of the decision being appealed. And as far as I can figure out, the thing in your appendix purporting to be the decision of the Board of Immigration Appeals is not. I don't understand. Where did it come from? It is not the document in the administrative record. It appears to be something that's been typed from scratch and poorly, full of errors and omissions. It is not the genuine decision of the Board of Immigration Appeals. Judge, I'll begin by saying that the filing of the brief was not the finest moment of our law firm. I have—and I'm getting to answer your question. I'm going to answer your question directly. I have been sick essentially since June of last year. I have had 100 percent turnover in my staff, so I have— But it's a lot easier to file the real decision rather than a fake one. Well, I don't think it was a fake one, Judge. I think what happened was there was a problem with the scanning of the original decision. It formatted it in such a way that it essentially—it mixed and matched and everything was a chaotic mess in that. And I think that one of my staff—and I take—first of all, I take full responsibility. It's my signature on the document. I take full responsibility for it. But I suspect that what happened was that because the original was so messed up that we had, that somebody took it upon themselves and copied it and formatted it properly with—I don't know what happened, Judge. All I can tell you is this is what I think happened. And I—whatever sanctions the court feels the need to impose, I recognize that this was a—again, not the finest hour, not my finest hour. Let's proceed with the merits. Thank you. Judge, on the issue of the standard of review, I think is kind of the central issue to this case. We take the position that this is not a Chevron case, that the intent of Congress can be, in fact, determined based on the common meaning and usage of the words in the statute. Under—and the—so the—there's a case—you'll have to excuse me, Judge, I'm a little flustered right now. And there's a case, Rodriguez v. Rodriguez, which was—I'm sorry, Enri Rodriguez-Rodriguez, 22IN, December 1991, which was one of the first cases from the Board of Immigration Appeals that dealt with this issue. And they indicated that the issue in terms of child abuse, in terms of child neglect, really required a harm. The subsequent decisions also required a harm. And the—I think that that reading makes sense when you look at what the common usage of the term child abuse, child neglect, back in the mid-'90s was, because the majority of the states in this case had a scheme, so to speak, of—just one second, Judge, this is part of my issue that I've had for the last year—it's part of a scheme that the states had, that I believe it was 35 out of the 50 states required some level of harm to the child in order for it to be considered child abuse. So that's the context under which the Immigration and Naturalization Act, these particular amendments, or this particular section, I should say, was called into creation. There is a case, and it's a Tenth Circuit case, and I know that it's not binding on this circuit, but it is, I think, instructive. It is uncertain whether you would prevail under the Tenth Circuit case, but the Attorney General's brief says that a whole bunch of other circuits have disagreed. Do you disagree with that proposition? No. Ibarra stands out like a sore thumb in terms of dealing with the current law. There is no other circuit that I am aware of that has looked at Ibarra and followed Ibarra. And honestly, I think that is a certain amount of inertia on behalf of the other circuits. It doesn't take—it's not inertia when a court of appeals says, we disagree with decision X. You might say inertia would be just falling along in line. When you have a circuit that says something and five other circuits say baloney, that's very hard to describe as inertia. Well, I think that Ibarra is well thought out. Are you referring to Ibarra? Ibarra, yes. That's the Tenth Circuit case that I'm talking about. Yes, I-B-A-R-R, not I-V. I said Ibarra. I'm sorry. I'm pronouncing it differently. But it is Ibarra is the case, I-B-A-R-R-A. I don't think you need to apologize, Mr. Cabranes. I think you can proceed with the case. We know which case you're talking about. Thank you. I think that the Tenth Circuit case is well thought out. It was well laid out. And it makes sense. And when you look at it, even the present case that the Board of Immigration Appeals has now and uses as its standard, the Sorum case, the Sorum case, in its concurring opinion, follows along. And this was before the Tenth Circuit case came along. The Tenth Circuit, the in re Sorum, they use the same essentially approach but come up with a different conclusion. So the approach used by the Tenth Circuit is not way out in left field. It's just that other circuits have disagreed with that approach. And I'm asking this circuit to consider what the Tenth Circuit has looked at and made a determination that the intent of Congress was not to have these child abuse cases where there's no actual harm to the child. I see that I have two minutes left, and I'd like to reserve that for rebuttal. Certainly, Counsel. Ms. Snyder. Good morning, Your Honors, and may it please the Court. My name is Alana Snyder, and I'm appearing today on behalf of the United States Attorney General. Respectfully, we're asking Your Honors to deny this petition for review for two reasons. First, the Board's definition of crime of child abuse, child neglect, or child abandonment pursuant to 8 U.S. Code Section 1227A2EI is reasonable and therefore entitled to deference. Ms. Snyder, Chevron is being considered by the Supreme Court right as we speak. Maybe even right now. Who knows? Although I think they're in argument right now. We know it didn't come out today. Yes. And likely, most likely, it's probably not going to come out until, I don't know, if I were to prognosticate, probably until June, right? So what do we do with this case, right? I mean, there are various ways of looking at it, and certain circuits have looked at it differently, right? So even under Chevron, there's step one. And then the question becomes, you know, under current Supreme Court doctrine, like, do we – we are supposed to use all normal tools of statutory construction? And as far as I can tell, under that formulation, very few courts have found this to be ambiguous, right? In fact, none. And so – and one would – that seems to be the logical conclusion of that test because that's what we do, right? We use normal canons of statutory interpretation to resolve all of our cases that deal with statutory language. And so what do you suggest that we do in this case? Sure. The government's answer to that is Chevron remains the law of the circuit, and there are circuit courts who have been faced with this issue, particularly the third, the eleventh, and actually very recently, just as recent as last week, the second circuit in an immigration case, Wong v. Garland, actually had a similar issue and sort of noted in a footnote, we recognize that Loper, Bright, and Relentless are pending, but Chevron remains the law of the circuit. I think as an alternative sort of argument that we'd posit before Your Honors that no party in Loper, Bright, and Relentless really disputed the fact that Skidmore deference or that Skidmore would still remain good law. So if Your Honors find that Velazquez, Herrera, and Sorum are thorough in their reasoning and are of sound reasoning and that later pronouncements of the board, for example, a matter of Mendoza-Osario and a matter of Rivera-Mendoza are consistent and the Board of Immigration Appeals remains consistent, that Your Honors could sort of, I hesitate when saying this, preserve the court's sort of this decision by citing to Skidmore and saying, you know, we look at this also with the Skidmore eye, if you will. And as Judge Easterbrook sort of noted, that there are six sister circuits who, or six of your sister circuits, who have already deferred to the board's definition of crime of child abuse, child neglect, or child abandonment. And I'd note that these six circuits all share two commonalities. The first, as Your Honor just pointed out, is all of them have determined that that phrase is ambiguous. The second is that all of them have deferred to the board's definition of crime of child abuse, child neglect, where the minimum mens rea is criminal recklessness, even where there is no resultant injury to the child. And we're asking Your Honors to join those circuits today. And I'd like to sort of highlight some differences from my friend's position today. So one of the points of contention, I think, between my friend and I is the criminal negligence issue. And I think that was the main issue in Ibarra, that the minimum mens rea in Ibarra was a criminal negligence. Here, the statute at issue, the Wisconsin statute at issue, the minimum mens rea is intentionality. There is no question of criminal negligence that's before the court. There are two circuits, the Third and the Fifth Circuit, who face the same issue and reserved decision on the question of criminal negligence. So the court doesn't even need to touch the Ibarra issue, if you will. So unlike my friend who's suggesting the court needs to grapple with this issue, that issue is not even really before the court. And I'd also note that the Tenth Circuit, in a later decision, a 2021 decision named Zarate-Alvarez, actually did come out and say that was what we were dealing with in Ibarra. That was sort of where the rubber met the road, the criminal negligence versus recklessness issue. And where it came to a statute, it was actually the very same Colorado statute that instead didn't deal with negligence but dealt with recklessness. They actually did defer to the board's definition where that mens rea was recklessness. I'd also like to address my friend's point about the majority of states having a statutory scheme that required harm to the child. I know this is also a point of contention between my friends and I. I'd like to note that the board doesn't need to take any sort of statutory interpretation or state-by-state interpretation. It's not required to use any statutory method of interpretation. The idea is that the Board of Immigration Appeals creates a uniform approach for a definition of crime of child abuse, child neglect, or child abandonment as the agency that creates a federal policy for immigration. I'd also like to note that Petitioner relies on Enri Rodriguez. Can we talk about that a little bit? Yes. So the statute has three elements, right? Crime of child abuse, child neglect, or child abandonment. Yes. And yet the agency applies this kind of unitary approach. Yes. And can you explain to me why that unitary approach would be permissible or reasonable given the fact that the statute itself specifically delineates each separate one? Yes. I think the best explanation for that is the fact that each one of those individual pieces does not say the word crime of before it. So it's crime of child abuse, child neglect, or child abandonment. And permit me to just open to the statute, why I have this big binder here. Just give me a moment. And it's sort of contra to the other provision of the statute. This is 1237. So as you can see in 8 U.S. Code section 1227A2EI, you can see any alien who, after the time of admission, is convicted of a crime of domestic violence and then a crime of stalking, right? So you have two separate a crime of. And then it says or a crime of child abuse, child neglect, or child abandonment. And so the logic there is the best statutory interpretation is that is one specific crime. That does not refer to individual crimes. Otherwise, the statute would have said a crime of child abuse, a crime of child neglect, or a crime of child abandonment. That was the logic of the board. I'm now thoroughly lost because on that view, it sounds like one state law must cover all three things, abuse, neglect, and abandonment. And if the state law doesn't cover all three, if it covers, for example, only child abuse, it wouldn't qualify. I think the logic there is maybe perhaps the opposite, that if the state statute covers any of those things, if it falls under, and I think, let me back up and say that part of the difficulty is that some states cover, say, behavior like we have here, endangerment, they cover that behavior as child abuse. They cover that behavior as child neglect. So the board was looking at, well, how do we determine whether or not endangerment is covered as neglect, if it's covered as abuse? So it looked at that definition and said it's one definition, whether the state defines it as abuse or neglect. I know it's confusing. It seems very convenient for the agency is what it seems like. Because it's a unitary definition. I think the board sitting down did what it is supposed to do, which is to look at, as Your Honor sort of pointed out, to look at those canons, to look at what was, at the time, the federal definitions of child abuse, look at different state definitions of child abuse, to look at Black's Law Dictionary in 19- Where did they refer to a federal definition of child abuse? So in a number of- There are federal statutes. Yes. And some of the provisions in the Immigration Code expressly pick up federal statutes. Yes. But this one is not among them. So why would we be looking at a federal definition? The board did, in a number of footnotes in Velazquez-Herrera, note to its consideration- Yeah, but is that supported by language in the statute? Or are you playing the game of Taylor, that when there is no express federal definition, you have to make up a federal common law definition? That's what Taylor says about 18 U.S.C. Section 16. Yes. Yes. I mean, I think that that is part of this, that you have to employ the different statutory tools of interpretation in order to come up with a generic definition. As Your Honor pointed out, there is no- May I continue? Sorry, I see that I'm- That there is no generic or common law definition. That's why I didn't understand your answer to Judge Lee, that we have two options, Chevron or Skidmore. Don't we really have a third option that doesn't involve the board's interpretation at all, and we just dive in? De novo review? Yes. Sure. If Your Honor's wanted to de novo review, yes. Thank you, Your Honor. All right. Thank you, counsel. Anything further, Mr. Cabranes? Judge, I think I've covered what I think of. Thank you. All right. Thank you very much. The case is taken under advisement.